UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____
Alvin Peterson, #01-A-1554,            :
Derrick Bonds, #95-A-7840,             :
Lorenzo Ford, #01-B-1500,              :
                                       :
         Plaintiff's Pro Se,           :
                                       :
     v.                                :     Civ. No. 02-cv-1559 (LEK)(DRH)
                                       :
Norma Peryea, ITS II,                  :
Clinton Correctional Facility,         :
                                       :
Randy Sears, Officer,                  :     MOTION TO AMEND COMPLAINT AND
Clinton Correctional Facility,         :     ADD ADDITIONAL PARTIES PURSUANT
                                       :     TO RULE 15 and 15(a) OF THE
Sharron Santerre, Gen. Ind. Training Supv.,: FEDERAL RULES OF CIVIL PROCEDURE
Clinton Correctional Facility,         :
                                       :
Patricia Smith, Senior Ind. Superintendent,:
Clinton Correctional Facility,         :
                                       :
Daniel A. Senkowski, Superintendent,   :
Clinton Correctional Facility,         :
                                       :
Glenn S. Goord, Commissioner,          :     JURY TRIAL DEMANDED
NYS Dept. of Correctional Services,    :
                                       :
James T. Hoffman, Asst. Dir. For Admin.,:
Corcraft Products, NYS Dept. of Corr. Serv.:
                                       :
John W. Conroy, Director, Corcraft Prod.,:
NYS Dept. of Correctional Services,    :
                                       :
         Defendant's,                  :
_____

   PLEASE TAKE NOTICE, that the plaintiff's hereby respectfully move this Honorable Court for an order pursuant to Rule 15 and 15(a) of the Federal Rules of Civil Procedure, granting permission to amend the complaint and add additional parties.

   Plaintiff's respectfully request to add as defendant's to this action pursuant to this court's order, John W. Conroy, Director, Corcraft Products, and James T. Hoffman, Assistant Director For Administration, Corcraft Products.

By order of this court filed December 26, 2002, Magistrate Homer directed that "plaintiff's take reasonable steps to ascertain the identity of defendant "Director, Corcraft Products," and that plaintiff's may then file a motion to amend their complaint and seek **leave** of the court to add the individual by name, as a defendant to this lawsuit."

Pursuant to the court's 12-16-02 order, plaintiff's filed their **motion** dated **February** 2, 2003, for leave to amend the complaint and add additional parties, which was affirmed to on February 6, 2003, and forwarded to this court and the Attorney General of record for the defendant's.

Defendant's having failed to file opposition or consent to the filing of plaintiff's amended complaint, instead, relying on any time vacum in the rendering of a decision by this court on the amended complaint, submitted it's answer to the original complaint knowing full well plaintiff's were seeking to amend the complaint, which was forwarded to this court at least one week prior to defendant's preparation and filing of it's answer to the original complaint.

By letter dated February 7, 2003, plaintiff Peterson wrote to the Northern District U.S. Marshals to inquire on the status of Service of Process upon defendant Randy Sears. On February 20, 2003, plaintiff Peterson received from the U.S. Marshals their notice dated February 18, 2003, setting forth that Service of Process upon defendant Sears was attempted on December 31, 2002, and that form USM-299, Acknowledgment of Receipt of Summons and Complaint, by Mail, was <u>not</u> returned to the U.S. Marshals within thirty days of **initial** mailing by defendant Randy Sears, and returned the unexecuted USM-285 form back to plaintiff Peterson. The notice further advised plaintiff Peterson, that if he desired the U.S. Marshals to make any further attempt to serve the Summons and Complaint on defendant Randy Sears, to notify them in writing and submit a new USM-285 form, Summons and Complaint along with his request for service in accordance with Rule 4 of the Fed. R. Civ. Proc..

Please note, that defendant Randy Sears, is the assigned officer in plaintiff's Peterson and Ford's program assignment in Tailor Shop-3, and has been at work daily. Further, this defendant being cognizant of **this** action, persumably, to prevent service upon him, will not accept any mail service, certified or otherwise, **therefore,** it may be necessary for defendant Randy Sears to be served in person.

However, on February 18, 2003, plaintiff's received the order filed 2-13-03 of Magistrate Gustave J. DiBianco (acting pursuant to General Order 27 of the N.D.N.Y.) rejecting plaintiff's motion to amend the complaint, to make corrections thereto, although there was an affirmation, **there** was no affidavit attached. On February 25, 2003, plaintiff's again forwarded their motion to amend the complaint, which was again rejected by Magistrate DiBianco, by order filed March 7, 2003, setting forth that an affidavit cannot be combined in support of the motion to amend.

Plaintiff's have now made the corrections to the amended complaint, and now re-submit the Motion to Amend the Complaint and Add Additional Parties for filing and service upon the added defendant's Pursuant to Rule 15 and 15(a) and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

Amendments are governed by Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides that:

> "[a] party may amend the party's pleading once as a matter of course at any time before a **responsive** pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days **after it is served.** Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

This is a Civil Rights Complaint Pursuant to 42 U.S.C. 1983, filed by Alvin Peterson, Derrick Bonds, and Lorenzo Ford, the plaintiff's pro se and in forma pauperis, State Prisoners, for the violations of their Eighth and Fourteenth Amendment Right's held under the United States Constitution, due to the racial discrimination, denial of equal treatment in program assignments, duties, pay grades, retaliation, harassment, and cruel and unusual punishment in operating a sweet shop business as a correctional program assignment, and defendant Norma Peryea's violation of Title 5 U.S.C. 552 & 552a of the Privacy Act, as to plaintiff Peterson, in willfully and intentionally preparing and filing inaccurate and false information in his files. Plaintiff's are seeking monetary damages, declaratory judgment, and injunction relief. Plaintiff's request a trial by jury.

## JURISDICTION

This is a Civil Rights Complaint Pursuant to 42 U.S.C. **1983,** for the violations of the plaintiff's 8th and 14th Amendment Rights, and defendant Norma Peryea's violation of Title 5 U.S.C. 552 & 552a of the Privacy Act as to plaintiff Alvin Peterson.

This **Court** has jurisdiction under 28 U.S.C. 1331, 1343(3)(4) and 2001. Plaintiff's invoke the pendent jurisdiction of this court.

## PARTIES

1. Plaintiff's Alvin Peterson, Derrick Bonds, Lorenzo Ford are presently incarcerated at the State of New York Department of Correctional Services. Clinton Correctional Facility, located in Dannemora, New York 12929.

2. Defendant Norma Peryea, ITS II, is employed by the State of New York Department of Correctional Services Division of Industries, as Taylor Shop-3 Instructor, and was at all times during the violations of the plaintiff's constitutional rights, and rights held under Title 5 U.S.C. 552 & 552a of the Privacy Act, her duties entailed inmate assignments in Tailor Shop-3, and the operations in said shop, she is sued in her individual and official capacities under the color of State and **Federal Laws.**

3. Defendant Randy Sears, is employed by the State of New York Department of Correctional Services as an Officer, and was at all times during the violations of plaintiff's Bonds, and Ford, Constitutional Rights, assigned as and to security of Industry Tailor Shop-3. His duties entailed the overall security in Tailor Shop-3, he is sued in his individual and official capacities under the color of State and Federal Laws.

4. Defendant Sharron Santerre, is employed by the State of New York Department of Correctional Services Division of Industries, as General Industrial Training Supervisor, and was at all times during the violations of plaintiff's Constitutional Rights assigned as the area supervisor for Tailor Shop-3, her duties entailed the supervision of Shop Instructors and the orderly operations of Tailor Shop-3. She is sued in her individual and official capacities under the color of State and Federal Laws.

5. Defendant Patricia Smith, is employed by the State of New York Department of Correctional Services Division of Industries, as Senior Industrial Superintendent, and was at all times during the violations of the plaintiff's Constitutional Rights assigned as Senior Industrial Superintendent, her duties entailed the supervision of all Tailor Shop Staff and the overall orderly operations of the Tailor Shop. She is sued in her individual and official capacities under the color of State and Federal Laws.

6. Defendant Daniel A. Senkowski, is employed by the State of New York Department of Correctional **Services** as the Superintendent of Clinton Correctional Facility, and was at all times during the violations of the plaintiff's Constitutional Rights assigned as the Superintendent of Clinton Corr. Fac., his duties entailed the supervision and overall responsibility of all staff and inmates, and the orderly operations of the facility, he is sued in his individual and official capacities under the color of State and Federal Laws.

7. Defendant James T. Hoffman, is employeed by the State of New York Department of Correctional **Services**, Corcraft Products, Division of Industries, as Assistant Director of Administration, his duties entailed the orderly operations of all Industry Shops within the DOCS, and overall supervision and responsibility of all staff and inmates, including Tailor Shop-3, and was at all times during the violations of the plaintiff's Constitutional Rights assigned as **Assistant** Director of Administration for the NYS DOCS Corcraft Products. He is sued in his individual and official capacities under the color of State and Federal Laws.

8. Defendant John W. Conroy, is employeed by the State of New York Department of Correctional Services, Corcraft Products, Division of Industries, as Director of Corcraft Products, his duties entailed the orderly operations of all **Industry** Shops, and overall supervision and responsibility of all staff and inmates within the DOCS Industries Shops, including Tailor Shop-3, and was at all times during the violations of the plaintiff's Constitutional Rights assigned as the Director of Corcraft Products, he is sued in his individual and official **capacities** under the color of State and Federal Laws.

9. Defendant Glenn S. Goord, is employeed by the State of New York Department of Correctional Services as Commissioner, his duties entailed the overall orderly operations, supervision and responsibility of all staff and inmates of the facilities of the DOCS, and was at all times during the violations of the plaintiff's Constitutional Rights assigned as the Commissioner of the DOCS. He is sued in his individual and official capacities under the color of State and Federal Laws.

## FACTS

10. On November 27, 2001, plaintiff Peterson entered his assigned program in Industry Tailor Shop-3, and began the duties of Floor Man, Material Bundler, Picker, and Inspector,

at pay grade 2.1 (26¢ per hour) which was later increased to pay grade 3.1 (32¢ per hour).

11. On or **about** March 3, 2002, plaintiff Peterson, was promoted to Issue Clerk, a key spot in Tailor-3, and for which is a pay grade-4 position. However, Peterson did not receive a pay increase to pay grade-4 when he took over the Issue Clerk position, despite his numerous request to receive grade-4 pay for working in a grade-4 position. Peterson remained the Issue Clerk for 6-plus months at pay grade 3.2 (35¢ per hour) until he was unfairly removed due to defendant Norma Peryea's retaliation, denial of equal treatment, and discrimination against him.

12. In early September 2002, plaintiff Peterson and other inmates who deserved to receive grade-4 pay, learned that defendant Peryea had given a caucasion inmate who worked at the picking table, picking thread and snapping buttons on the pants, a pay increase to pay grade-4. As such, Peterson filed an Inmate Grievance for being denied pay grade-4 for working in a grade-4 position for 6-plus months as Issue Clerk.

13. On September 24, 2002, defendant Peryea called **Peterson** to her desk and began to display animosity toward him by stating "You will not receive fuckin grade-4 pay, because you don't operate a fuckin machine, which you must do in addition to issue clerk duties." That assessment could only imply that Peterson had to perform multiple duties in order to receive grade-4 pay, when caucasion inmates do not. Nevertheless, Ms. Peryea, is in violation of DOCS Industrial Directive 12002, Section IV part C..

14. Defendant Peryea then proceeded to blame Peterson for material that was in the issue clerk cage that was used by the previous clerk to cover material that he was not ready to hand out. When Peterson reminded Ms. Peryea of this fact, she replied by stating "Spare me the bullshit, that fuckin material was not there when Cruz had the cage." Defendant Peryea made this comment knowing full well that the material was there.

15. Nevertheless, in retaliation for filing the grievance, Ms. Peryea removed Peterson from his assignment as Issue Clerk, and assigned him to the picking table to pick thread, then assigned the caucasion inmate who was working at the picking thread table area with grade-4 pay, to the issue clerk position.

16. On October 2, 2002, Peterson was assigned to the single needle sewing machine, though defendant Peryea knew that Peterson never went to Vocational Tailoring, and never operated a sewing machine, nor, knew how to sew, Ms. Peryea after only three (3) weeks of operating a machine, and learning how to sew, gave Peterson an unsatisfactory progress report, erroneously claiming that Peterson was really dragging his feet since his removal from the issue clerk assignment, and was not interested in the program because he could not prepare a bundle of fronts in a days time.

17. Peterson has been denied equal treatment as there has been other inmates who were unable to complete a bundle of fronts in a days time, these inmates did not receive an unsatisfactory progress report, nor a pay decrease, rather, they were moved to another area in the shop where they would be more proficient, notably, those inmates were caucasion.

18. On October 23, 2002, due to Peterson having to research and complete his legal litigation for his upcoming Criminal Appeal, he asked Ms. Peryea to remove him from the overtime list, because he would not be allowed to go to the law library if he were to do overtime. Ms. Peryea became very belligerent and displaying animosity toward Peterson, stated "Why because Bonds is off the list." (refering to Bonds removal off the overtime list by defendant Peryea and Santerre, in retaliation for his complaints). "Peterson replied, "No, because I will not be able to go to the law library for my legal research on my upcoming Criminal Direct Appeal."

19. Shorty **thereafter, defendant** Peryea called Peterson to her desk and stated "as per Sharron Santerre your name has been removed from the overtime list, and you will not be asked again to do overtime, and if you don't start giving me a bundle a day starting (10-24-02) you will be removed from the day list as well." Then in a retaliatory and vindictive manner, prepared and filed an Inmate Progress Report for pay decrease, in violation of Title 5 U.S.C. 552 & 552a of the Privacy Act, when she erroneously claimed that Peterson have not put forth an honest effort on the single needle machine, and that since his removal from issue clerk, for "disciplinary," he has shown little interest in the program. Ms. Peryea further gave Peterson below average evaluations in several catogories such as, e.g., attitude toward peers, effort and initiative, aptitude/employability, etc., and gave Peterson a pay decrease from pay grade 3.2 (35¢ per hour) to pay grade 2.2 (29¢ per hour) and told Peterson in order for him to receive pay grade 3.2, again he has to turn in a bundle of fronts a day. Although, there is no such requirement, as it is only required that the inmate do the best of his ability, defendant's Peryea and Santerre imposed the requirement of one bundle a day upon Peterson in an attempt to have him removed from the program, knowing that he was just beginning to learn to sew and use the machine, it would be difficult for him to do so.

20. Since Peterson was not removed from the issue clerk assignment for "disciplinary" reasons, and his attitude toward his peers and authority figures are good and favorable, Ms. Peryea's filing of the false information in the Inmate Progress Report had and is still causing an adverse affect upon him and violates Title 5 U.S.C. 552 & 552a of the Privacy Act, and the defendant's have denied Peterson equal treatment, discriminated, and retaliated against him, and are really operating a sweet shop business as a correctional program assignment.

21. All of Peterson's complaints to defendant Senkowski were forwarded to defendant Smith, who then referred the matter to defendant Santerre. Defendant Santerre refused to interview any of Peterson's witnesses, and took no actions to end the discriminatory, denial of equal treatment, retaliatory behavior of defendant Peryea, as such Peterson again made complaints to defendant's Senkowski, Goord and Director of Corcraft Products, which were all to no avail, as such, the denial of equal treatment, discrimination, and retaliatory treatment is still being inflicted upon Peterson.

22. Plaintiff Bonds also filed complaints with defendant Patricia Smith in May 2002, complaining of defendant Peryea's use of profanity, denial of equal treatment, abuse of authority, and threats toward him.

23. Viewing defendant Smith's failure to respond to Bonds complaint within a months time, Bonds filed the same complaint with First Deputy Superintendent, Dale Artus, which was accompanied with a copy of the complaint to defendant **Smith against defendant Peryea.**

24. Thereafter, Bonds was interviewed by defendant Santerre, who acting with prejudice, refused to investigate into any of the facts that he had requested her to check as stated in his complaint.

25. On September 19, 2002, Bonds filed an inmate grievance due to defendant's Peryea and Sears deliberately removing the chair cushions to disrupt the flow of the program, and subject Bonds and the other inmates to cruel and unusual punishment by threatening the health of the inmates by forcing them to sit at a sewing machine for several hours causing their circulation to be cut off from the hard chairs, thereby denying Bonds and the other inmates equal treatment, as the other shops chair cushions were not removed from their chairs.

26. Due to the many complaints Bonds filed against defendant Peryea and Sears, and the grievances and complaints filed by Peterson and other inmates about their pay grades. Defendant's Peryea and Sears began to deliberately retaliate against Black and Muslim inmates. Defendant Sears prepared and filed misbehavior reports on 3-Black inmates falsely charging them for conduct they did not commit, and Ms. Peryea, began to continue assigning blacks to more demanding assignments, while caucasions were assigned to positions that required the lease amount of work.

27. On September 25, 2002, Bonds filed a complaint with defendant Senkowski further complaining of defendant Sears going to caucasion inmates and falsely making very strong accusations, by telling the caucasion inmates to watch their backs, because Bonds was behind the racial tension within the shop, when in fact the racial tension and discrimination, denial of equal treatment, retaliation and harassment was derived from the hands of defendant's Sears and Peryea.

28. Defendant Senkowski, referred Bonds 9-25-02 complaint to defendant Smith, Although Bonds 9-25-02 complaint was against defendant Sears, which presented a security issue, Bonds was interviewed by defendant Santerre, at which time she inquired on the cover letter to the complaint, then threatened Bonds to sign off from the complaint making it very clear that the Union was going to see to it that nothing happens to their employees. Viewing that Bonds complaint was in fact against an officer (defendant Sears) it was inappropriate for defendant Santerre to interview him on the complaint, as such, Bonds signed off on the complaint. Then, as a result of Bonds signing off on the complaint, and filing grievances and complaints, defendant Sears began to instigate racial tension between black and caucasion inmates.

29. Because of the manner in which Bonds 9-25-02 complaint was investigated, Bonds filed the same complaint with defendant Goord, as a result, on October 29, 2002, Bonds was interviewed by Sgt. Champange on his 9-25-02 complaint against defendant Sears. On November 1, 2002, Bonds received a response from the investigation conducted by Sgt.-Champange, from Captain Carey, which stated "Your recent complaint have been investigated by both security and civilian supervisors. Both named employees there have filed statements denying that they harassed or discriminated against you."

30. As a result of Bonds filing complaints and grievances against staff, in retaliation for such, on November 4, 2002, Bonds received a Program Committee call-out. At which time Assistant Industrial Superintendent Scott Drollette terminated Bonds from his program assignment as a conjunction to continue to retaliate against him for the filing of the complaints against defendant's Peryea and Sears. And the false and inaccurate information submitted to the Program Committee by defendant Peryea.

31. Bonds requested to be assigned to another Tailor Shop but Mr. Drollette denied Bonds request stating his reluctancy to place him in another Tailor Shop by stating "employees within other shops will be out to get you." This stated comment by Mr. Drollette further supports Bonds complaints that it is the integrity of this facility staff to continuously uphold their employees wrong doings. Bonds was denied equal treatment as there has been other inmates who filed complaints on defendant's Peryea and Sears, but were not terminated from their program, but were instead assigned to another Tailor Shop. Therefore, Bonds is entitled to this same treatment.

32. On September 30, 2002, plaintiff Ford was retaliated against and threatened for being called to testify as a witness at the tier hearing of inmate John Taylor, who defendant Sears had written a misbehavior report falsely charging Taylor with moving a

machine, in retaliation for the complaints filed against him and defendant Peryea. Upon Ford returning from testifying for Mr. Taylor, Ford approached the desk to obtain his time card from defendant Sears to punch back in. As defendant Sears handed him the time card, in an aim to provoke and intimidate Ford, broke out in a loud and belligerent laughter. Ford **asked** "is there some joke?" Sears responded "the joke is going to be on you and the rest of you guys, you're going to find out!"

33. Ford then asked, "What are you talking about?" Sears answered with a snear, "you'll see!" Defendant Peryea immediately interjected stating, "you guys are going to pay for all of these meaningless call-outs." Ford did not know to what Peryea was referring, as the only call-outs he had recently received was to medical which his past absence were all medically related. These acts were witnessed by defendant Santerre.

34. Two days prior to defendant Sears going on vacation he continued his harassment, threatening and belligerent treatment toward Ford. Sears called Ford to his desk and yelled in Ford's face, "that's right Mr. Big ears, I said to get him out of here!" "Do you think I'm stupid?" "I know why your sitting up here!" (referring to a statement he yelled out to a counselor who requested to interview inmate Pettis, who has since been transfered). However, in truth and fact Ford was in his assigned work area. Viewing that Sears was acting out of control, Ford said nothing and returned to the job function he was performing. For the next half hour officer Sears leaned belligerently forward scowling malevolently down at Ford which actions were very threatening.

35. In further retaliation for going to testify for Mr. Taylor, and for the complaints filed by Peterson, Bonds and other inmates, just one day before Sears went **on** vacation at approximately 2:50 PM, the time that work stops, while Ford was in the bathroom, Sears tossed two pair of **pants where** Ford had been working. Inmate Hadley #01-R-5482, informed

-13-

Ford that he went to clip the thread off the pants, but Sears instructed Hadley to leave the pants for Ford to do, and that if Ford didn't do them he was going to write Ford up. As Ford came out of the bathroom everyone had stopped work, however, being cognizant of Sears attitude Ford clipped the thread off the pants.

36. Ford then related the situation to Peterson, Peterson also told Ford that he had begun to clip the pants also, but Sears stopped him from doing so, and told Peterson to leave the pants that Ford was gonna do them. This behavior clearly shows intent on the part of Sears to create a situation which to give Ford an unfair and false disciplinary report to subject Ford to punishment that is not warranted and unnecessarily cruel.

37. In further retaliation and denial of equal treatment, Ford has been given a new job assignment in which he may not be as proficient as he was in his last three assignments in Tailor-3, though his work performance evaluations will attest to this. The situation causes Ford great concern, as he has witnessed the tactics used against other inmates in Tailor-3 by defendant's Peryea and Sears, and the fraudulent disciplinary report that was previously written on Ford by defendant Sears, for which the hearing officer found it permissible to find Ford guilty of charges not stated in the misbehavior report, and never came into question, and for which defendant Senkowski nevertheless affirmed.

38. Further with respects to plaintiff Peterson being discriminated against and denied equal treatment, as previously stated, defendant Peryea removed Peterson from his assignment as issue **clerk** due to the grievances and complaints he filed against her, and then assigned a caucasion inmate to the issue clerk assignment, who was later placed in disciplinary segregation, for reasons unrelated to his program assignment. However, defendant Peryea then placed another caucasion inmate to the issue clerk assignment. This caucasion inmate received a raise to pay grade-4 after just 30-days being issue clerk. Peterson was issue clerk for 6-plus months, but was denied a pay grade-4 increase. Nevertheless, this caucasion

inmate was **later** transfered. Ironically, Ms. Peryea, again assigned another caucasion inmate to the issue clerk assignment, though, there were inmates of color who had been assigned to Tailor-3 much longer then the caucasion inmate, and who would had accepted the issue clerk assignment had they been asked.

39. Plaintiff's Peterson, Bonds, and Ford have filed complaints and grievances to defendant's Patricia Smith, Senkowski, Goord, and Director of Corcraft Products. Plaintiff's complaints and grievances were all to no avail.

## CAUSE OF ACTION

40. Defendant Norma Peryea, violated the plaintiff's 14th Amendment Rights when she discriminated against, and denied them **equal** treatment in job assignments and pay grades, and pay grade increases, and further subjected the plaintiff's to cruel and unusual punishment in violation of the 8th Amendment, for filing grievances and complaints and threatening their health by failing to provide chair cushions to the plaintiff's and other inmates, further violated Title 5 U.S.C. 552 and 552a of the Privacy Act with respects to plaintiff Peterson.

41. Defendant Randy Sears, violated plaintiff's Bonds, and Ford 14th Amendment Rights when he discriminated against and denied them equal treatment, and subjected them to cruel and unusual punishment when him and defendant Peryea removed the chair cushions and retaliated, harassed, and threatened them for filing complaints and grievances, and threatening their health by failing to provide chair cushions, in violation of the 8th Amendment.

42. Defendant Sharron Santerre, violated the plaintiff's 14th Amendment Rights when she discriminated against them and denied them equal treatment, and subjected them to cruel and unusual punishment in violation of the 8th Amendment, when she retaliated and harassed them for filing complaints and grievances and threatening their health by failing to provide chair cushions to the plaintiff's and other inmates, and failing to exercise her supervisory authority to correct the matter.

43. Defendant Patricia Smith, violated the plaintiff's 14th Amendment Rights when she allowed and contributed to the discriminatory and denial of equal treatment in job assignments and pay grades and pay grade increases, and violated the plaintiff's 8th Amendment Rights when she subjected them to cruel and unusual punishment by threatening their health in failing to provide chair cushions for the plaintiff's and in retaliation, harassment for filing complaints and grievances, and failing to exercise her supervisory authority to correct the matter.

44. Defendant Daniel A. Senkowski, violated the plaintiff's 14th Amendment Rights when he **failed** to order his staff to discontinue from discriminating against, and denying the plaintiff's equal treatment as complained to him, and violated the plaintiff's 8th Amendment Rights when he **subjected** the plaintiff's to cruel and unusual punishment in allowing the retaliation, and harassment to be inflicted upon them, and threatening their health by failing to provide chair cushions for the plaintiff's and other inmates, and allowing a program assignment to be operated as a sweet shop business.

45. Defendant Glenn S. Goord, violated the plaintiff's 14th Amendment Rights when he failed to order the other defendants to discontinue from discriminating against, and denying the plaintiff's equal treatment as complainted to him, and violated the plaintiff's 8th Amendment Rights when he subjected the plaintiff's to cruel and unusual punishment when he allowed the retaliation and harassment to continue being inflicted upon them, and

threatening their health by failing to provide chair cushions for the plaintiff's and other inmates, and allowing the operation of a sweet shop business as a correctional program assignment.

46. Defendant James T. Hoffman, violated the plaintiff's 14th Amendment Rights when he failed to order the discontinuance of the discriminating treatment toward the plaintiff's and denying them equal treatment as complainted to him, and violated the plaintiff's 8th Amendment Rights by subjecting them to cruel and unusual punishment in allowing the retaliation, harassment and threats to be inflicted upon the plaintiff's for filing grievances and complaints, and threatening their health by failing to provide chair cushions for the plaintiff's and other inmates, and the operation of a sweet shop business as a correctional program assignment.

47. Defendant John W. Conroy, violated the plaintiff's 14th Amendment Rights when he failed to order the discontinuance of the discriminating treatment toward the plaintiff's and denying them equal treatment as complainted to him, and violated the plaintiff's 8th Amendment Rights by subjecting them to cruel and unusual punishment in allowing the retaliation, harassment and threats to be inflicted upon the plaintiff's for filing grievances and complaints, and threatening their health by failing to provide chair cushions for the plaintiff's and other inmates, and the operations of a sweet shop business as a correctional program assignment.

48. The plaintiff's Constitutional Rights were violated by the named defendants due to their gross negligence in the supervision of their subordnates, and in the operation of a sweet shop business as a program assignment, and handling the plaintiff's complaints and grievances.

WHEREFORE, plaintiff's respectfully request this Honorable Court to grant them the following relief sought:

A. Issue declaratory judgment that the defendant's violated the plaintiff's Eighth and Fourteenth Amendment Rights held under the United States Constitution.

1. When they descriminated and denied equal treatment and protection in the assignment of programs, detail assignments, pay grades as given to caucasion inmates.

2. When they retaliated, harassed, and threatened the plaintiff's for filing grievances and complaints for the Constitutional violations as described herein, and subjecting plaintiff's to cruel and unusual punishment as a **result,** and mental anguish.

3. Issue an order directing the defendant's to refrain from it's discriminatory practices in the assignments of programs, detail assignments, and pay grades, and to provide equal treatment as given to caucasion inmates, and to refrain from retaliating, harassing, and threatening the plaintiff's for filing grievances and complaints, and ths Civil Action.

B. Grant Compensatory damages in the following amount:
$350,000.00, against each defendant named herein.

C. Grant punitive damages of $500,000.00, against each defendant named herein.

D. Grant such other and further relief that this court deems just and proper as it may appear plaintiff's are entitled.

WHEREFORE, plaintiff's respectfully request this Honorable Court to grant them the relief sought herein, in the true interest of justice.

Dated: Dannemora, New York
       March 14, 2003

Respectfully submitted, plaintiff's pro se,

*Alvin Peterson*
Alvin Peterson #01-A-1554
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

*Lorenzo Ford*
Lorenzo Ford #01-B-1500
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Derrick Bonds #95-A-7840
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Alvin Peterson, et al.,                :

       Plaintiff's Pro Se,           :           Civ. No. 02-cv-1559 (LEK)(DRH)

v.                                     :

Peryea, et al.,                        :           AFFIDAVIT OF SERVICE

       Defendant's,                  :

---

STATE OF NEW YORK)
COUNTY OF CLINTON)ss:

I, Alvin Peterson, the plaintiff in the above entitled action, hereby swear under the penalties of perjury:

That I have placed a true and correct copy of the foregoing Notice of Motion, Motion to Amend Complaint, Affidavit In Support, and Affidavit of Service in the Mail Depository located at Clinton Correctional Facility, this __22__ day of July 2003, to be mailed via U.S. Postal Service, First Class Mail to the following parties.

Clerk of Court
United States District Court
Northern District of New York
P.O. Box 7367
100 S. Clinton Street
Syracuse, NY 13261-7367

Bridget E. Holohan, Esq.
Assistant Attorney General
State of New York
Office of the Attorney General
The Capitol
Albany, NY 12224-0341

Dated: Dannemora, New York
      July 20, 2003

Sworn to before me this

__22__ day of July 2003.

_Michael R. Vincent_
    Notary
MICHAEL R. VINCENT
Notary Public
NO. 01VI6089116
Qualified in Clinton County
Commission expires March 17, 2007

Respectfully submitted,

_Alvin Peterson_
Alvin Peterson #01-A-1554
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

-19-